Baker *v.* Cash.

5-2978                                     367 S. W. 2d 225

Opinion delivered May 6, 1963.

*John B. Driver,* for appellant.

*Roy Danuser* and *Eugene W. Moore,* for appellee.

Carleton Harris, Chief Justice. Helen Cash, appellee herein, was a nominee for the office of school board director at the regular school election held in St. Joe School District No. 69 of Searcy County, on December 5, 1961. Her name was printed on the ballot. Noel Baker, Jr., appellant herein, qualified as a write-in candidate for

the same position. Two hundred thirty-five (235) ballots were cast at the election, and at the conclusion thereof, the election officials certified appellee as the duly elected director of said school district. Within the time prescribed by law, appellant filed his complaint alleging that he received a majority of the votes cast in said election, and that the judges and clerks at said election had wilfully refused to count and tabulate 176 ballots which had been cast by legal electors of the district for him as a write-in candidate for the aforesaid office. One hundred seventy-one (171) names were then listed as individuals who allegedly voted for contestant. Appellant then prayed that these uncounted ballots be counted and tabulated, and that he be declared the duly elected school director. Appellee filed an answer denying that Baker had received a majority of the legal votes cast, but stated that she had no objection to a recount of the ballots, ''and the legal votes received by each party hereto be determined and ascertained.'' The case was heard on April 27, 1962, at which time the court announced:

''Under the pleadings in this case, it seems that the only way it can be determined which of these candidates received the highest number of legal votes is to open the ballot box and count the votes. First, it will be necessary that it be shown that the ballot box is intact, that it is in the same condition it was immediately after the election, in other words that the ballots have not lost their integrity. It will be necessary to show that before they would be legal evidence.''

Appellant then called as his witness Mrs. Jimmie Lee Falls, County and Circuit Clerk of Searcy County. Mrs. Falls testified that the ballot box was in the same condition (at the time of the hearing) as when delivered to her by the judges of the election immediately after the certification of the vote. She stated that she sealed the box on the night of December 5. ''I took a strip of paper and put it across on it and sealed it. I put scotch tape on it on each side and I initialed that piece of paper that I sealed it with.'' She testified that the ballot box was still in the same condition as when she sealed it.

Following her testimony, the court stated:

"The Court thinks it has been sufficiently established that the ballot box is intact and the ballots are in the same physical condition that they were at the time they were delivered to the Clerk, so it is hereby ordered that the Clerk as official custodian of the ballot box bring the box into open Court and to open it for the inspection of interested parties."

The ballot box was then opened, and the ballots were individually counted by the clerk, the court reporter, and the attorneys for both parties, the court directing that the ballots should be challenged by counsel as the count proceeded. During the count it developed that a number of ballots reflected that both candidates had been voted for, *i. e.*, an "x" had been placed in the square opposite the name of Helen Cash, and the name of Noel Baker, Jr. had been written in on the next line, and an "x" placed in the square by his name.

After completing the counting, appellant called his father, Noel Baker, as a witness. Baker testified that he saw each ballot as it was counted on December 5, 1961, and no ballot that was counted at that time contained an "x" in both squares. Noel Baker, Jr., then testified that the ballot box had a different appearance at the present (time of the hearing) than when delivered to the clerk on December 5. He stated, "Well, when it was delivered to her, she took an envelope and rolled it up and took mucilage and stuck it over the box like that." Upon request, appellant was given 10 days in which to file a motion challenging the integrity of specific ballots, though the court held that the integrity of the ballot box and verity of the ballots as evidence had not been destroyed.[1] Thereafter, appellant filed his motion asking the court to direct the County Clerk to bring into court

---

[1] THE COURT: The Court has already passed on the question of the integrity of the ballot box. Testimony was taken on that this morning, and both parties had an opportunity to question the condition of the ballot box fully this morning and testimony was offered and further testimony could have been offered as to the appearance and condition of the box, as to whether or not it showed any signs of being tampered with, and that question I think was fully developed this morning, so far as the appearance of the box itself is concerned.

the official list of electors voting at the election, together with the tally sheets, and, further, to direct the County Treasurer to produce the stub box containing the signature of the voters. Further:

"That when said votes were opened it was disclosed that Forty-seven (47) or more votes which were cast for Contestant disclosed that said voters wrote in the name of Noel Baker, Jr., and placed an "x" in the square opposite his name written in and that according to affidavits hereto attached subsequent to said Election, an "x" had also been placed after the printed name of Helen Cash; thus further destroying the verity of these ballots and further that Forty-seven (47) ballots marked in this manner are too many to have been marked inadvertently by the voters and further that many of the ballots show to have been pulled from the sealed box through the slot by a wire."

The motion was supported by the affidavits of 159 qualified electors who stated that they had voted for Baker, "and that if an "x" appears after the name of Helen Cash, Contestee, it was placed therein by some other person, after they had placed their ballot in the ballot box on the day of the election."

This motion was denied, following which the court rendered its findings of fact and conclusions of law, as follows:

"After a recount of the ballots in open Court in the presence of the parties and attorneys, and after hearing all the testimony in the case, the Court finds the following facts:

"That a total of 235 ballots were cast in the school election in St. Joe District; that 70 ballots were cast for the contestee which are not contested, and that 53 ballots were cast for the contestant which are uncontested; that 47 ballots were cast on which there was a write-in and both boxes were marked with an "x"; that 23 ballots were cast on which there was no write-in name and both boxes were marked with an "x"; that 21 ballots were cast with neither box marked with an "x"; that 8 ballots were cast

with no write-in name and an "x" marked in the box below the name of the printed candidate Helen Cash; that 13 ballots were challenged because of irregularities in the name of the write-in candidate.

"It was stipulated by the parties, and the Court so holds that the 47 ballots on which both boxes were marked with an "x" are not legal votes.

"As to the 23 ballots with no write-in name but both boxes marked with an "x", it could not be reasonably contended that the voters of these ballots intended to vote for the contestant, since they did not write his name on the ballot. The more serious question is whether or not they should be counted for the contestee. The ballots indicate to the Court that they were intended to be votes for the contestee. Of course, the extra "x" mark is superfluous. It doesn't appear to the Court that this is a strong enough reason to disfranchise these voters.

"The 21 ballots which have no "x" mark in either box are irregular and cannot be counted for either candidate.

"It is the opinion of the Court that the 8 ballots with no write-in name, but the "x" mark is in the box below the name of the printed candidate, and no "x" mark following the name of the printed candidate, are illegal votes, and cannot be counted.

"With reference to the 13 miscellaneous challenges, ballots No. 277, 56, 73 and 57 are for Frank Winder as a write-in candidate, obviously these ballots cannot be counted. Ballot No. 11 was cast for W. R. Baker as a write-in, and ballot No. 54 was cast for James Baker as a write-in; obviously these cannot be counted for the contestant. The other 7 miscellaneous challenged ballots, while irregular in form have some indication that the voters intended to cast their ballots for the contestant, and these 7 votes are allowed for the contestant.

"Therefore, the Court finds that the contestant received 60 legal votes and that the contestee received 93 legal votes in said election."

Thereupon, the court entered its judgment finding that Helen Cash was the duly elected school director of St. Joe School District No. 69, and from such judgment appellant brings this appeal.

The above findings concisely state the view of the trial court, and we proceed to briefly review those findings.

While no formal stipulation was entered into that ballots carrying an "x" in both boxes would not count for either side, the parties agreed to treat such ballots in that manner, and in tabulating the individual votes, used that method. The court's finding that the parties had stipulated that such votes would not be counted is supported by the record; for that matter, appellant does not dispute the fact. We hold that the court ruled correctly as to these 47 ballots.[2]

We likewise agree with the court's determination as to the 23 ballots with no write-in name, but with an "x" appearing in both boxes. The "x" in the box after a blank was meaningless, and the court properly counted these votes for appellee.

Certainly the action of the court in holding that the 8 ballots were not votes for either candidate cannot be complained of by appellant since there was no possible way that the votes could have been counted for him.

Six (6) ballots were cast for other write-in candidates, and appellant cannot claim these votes. Seven (7) votes, though irregular in form, were allowed for Baker.

The court erred in one respect, viz., in its ruling relative to the 21 ballots wherein Noel Baker, Jr.'s name was written in but no "x" was placed in the box opposite his name. In *Clement* v. *Davis*, Law Rep. of Dec. 17, 1962, 362 S. W. 2d 706, decided subsequent to the trial court's decision in this case, we held that it is unnecessary to the validity of a write-in vote that a cross mark appear in the square at the right of the name. Baker should therefore have been allowed 21 more votes, but this would not change the outcome of the election.

---

[2] Also, on some of these ballots, the name of "Noel Baker" rather than "Noel Baker, Jr." was written in.

When all the votes that Baker could possibly lay claim to (counting both those for ''Noel Baker, Jr.,'' and ''Noel Baker'') are added, we find a total of 128.[3] Yet, appellant's motion was supported by the affidavit of 159 persons. Obviously, a large number of these persons were in error, since there is no contention that Baker's name was erased from any ballot. Favorable action by the court on Baker's motion would have had the same effect as holding another election, to which relief appellant was not entitled.

Since the error herein pointed out does not change the result of the election, the judgment is affirmed.

[3] Broken down as follows: 60 allowed by the court, 47 not counted for either side, and 21 with no "x" in the box.